Michael SWEENEY

v.

Robert ABRAMOVITZ.

Civ. No. N–77–467.

United States District Court,
D. Connecticut.

March 13, 1978.

Donald G. Walsh, New Haven, Conn., for plaintiff.

John R. Williams, Williams, Wynn & Wise, New Haven, Conn., for defendant.

RULING ON MOTION TO REMAND

NEWMAN, District Judge.

This motion to remand a suit removed from state court appears to present an issue of first impression as to the jurisdiction of a federal court to hear a claim for malicious prosecution of a civil suit, where the prior suit had been brought pursuant to a federal statute.

The dispute stems from an incident in which Michael Sweeney, a New Haven police officer and respondent on this motion, arrested Dr. Robert Abramovitz, the petitioner. Thereafter Abramovitz sued Sweeney and others in this Court, alleging essentially a cause of action under 42 U.S.C. § 1983 for an illegal arrest and a denial of

free speech rights protected by the First and Fourteenth Amendments. At trial a jury returned a verdict for the defendants. Sweeney then brought suit against Abramovitz in the Superior Court for New Haven County, alleging that Abramovitz' civil action "was commenced and prosecuted . . . without probable cause, and with a malicious intent . . . ." Abramovitz removed the second suit to this Court, and Sweeney now moves to have it remanded.

■ Abramovitz' reliance on 28 U.S.C. § 1443, the civil rights removal statute, is unavailing. His theories for invoking both subsections of § 1443 fail at the outset because § 1983, despite its obvious protection of civil rights, is not a law providing for "equal civil rights" within the meaning of the removal statute, *Georgia v. Rachel*, 384 U.S. 780, 792, 86 S.Ct. 1783, 16 L.Ed.2d 925 (1966); *New York v. Galamison*, 342 F.2d 255, 271 (2d Cir. 1965), at least where § 1983 is not invoked to vindicate a racially motivated denial of equal protection. See *Armeno v. Bridgeport Civil Service Commission*, 446 F.Supp. 553, 556 n. 1 (D.Conn. 1978).

■ However, the jurisdictional argument based on 28 U.S.C. § 1441(b) is far more substantial. In essence, Abramovitz alleges that this Court has original jurisdiction over Sweeney's suit because that suit arises under the laws of the United States within the meaning of 28 U.S.C. § 1331. Tested by Justice Holmes' oft-repeated formulation that "a suit arises under the law that creates the action," *American Well Works Co. v. Layne & Bowler Co.*, 241 U.S. 257, 260, 36 S.Ct. 585, 586, 60 L.Ed. 987 (1916), Sweeney's malicious prosecution suit, created by state law, seems at first blush an unlikely candidate for federal question jurisdiction. But the Holmes formulation is not exclusive, and federal jurisdiction has been recognized over causes of action created by state law where "an important question of federal law is an essential element in the case." Wright, Law of Federal Courts (3d ed. 1976) § 17 at 67.

The fountainhead for recognizing federal question jurisdiction over a state law cause of action that depends on a construction of federal law is *Smith v. Kansas City Title Co.*, 255 U.S. 180, 41 S.Ct. 243, 65 L.Ed. 577 (1921). There shareholders of a trust company sought to enjoin the directors from investing in certain federal bonds on the grounds that issuing the bonds was unconstitutional and that the directors were not authorized to invest in illegal securities. The Court considered the propriety of federal jurisdiction *sua sponte* and formulated the standard for a federal question as follows: "where it appears from the bill or statement of the plaintiff that the right to relief depends upon the construction or application of the Constitution or laws of the United States, and that such federal claim is not merely colorable, and rests upon a reasonable foundation, the District Court has jurisdiction under this provision." *Id.* at 199, 41 S.Ct. at 245. The Court concluded that since the controversy depended on determining the constitutionality of a federal statute, federal question jurisdiction existed. *Id.* at 201, 41 S.Ct. 243.

In this Circuit *Smith* has been relied on for the proposition that "[e]ven though the claim is created by state law, a case may 'arise under' a law of the United States if the complaint discloses a need for determining the meaning or application of such a law." *T. B. Harms Co. v. Eliscu*, 339 F.2d 823, 827 (2d Cir. 1964), *cert. denied*, 381 U.S. 915, 85 S.Ct. 1534, 14 L.Ed.2d 435 (1965). In *McFaddin Express, Inc. v. Adley Corp.*, 346 F.2d 424 (2d Cir. 1965), *cert. denied*, 382 U.S. 1026, 86 S.Ct. 643, 15 L.Ed.2d 539 (1966), the Court reformulated the test for determining the existence of a federal question as depending on

> whether the complaint is for a remedy expressly granted by an act of Congress or otherwise "inferred" from federal law, or whether a properly pleaded "state-created" claim itself presents a "pivotal question of federal law," for example because an act of Congress must be construed or " 'federal common law' govern[s] some disputed aspect" of the claim.

346 F.2d at 426.

That formulation was relied on in *Ivy Broadcasting Co. v. American Tel. & Tel.*

*Co.,* 391 F.2d 486, 489 (2d Cir. 1968). There plaintiffs brought a negligence and breach of contract action against an interstate carrier of telephone service regulated under the Communications Act of 1934, 47 U.S.C. §§ 151–609. After examining the regulatory scheme, the Court concluded that the duties and liabilities of interstate communications carriers should be governed by federal law, 391 F.2d at 491, and that the case therefore arose under federal law. 391 F.2d at 492.[1] *Ivy Broadcasting* is not necessarily authority for exercising jurisdiction over the claim in this case, because all aspects of the state-created malicious prosecution claim are not necessarily governed by federal law simply because the original claim was brought pursuant to a federal statute. But the principle of *Smith v. Kansas City Title Co., supra,* has been applied in cases where only one aspect of the state-created claim turned on an issue of federal law.

In *Chengfan Hsu v. Philippine Air Lines,* 98 F.Supp. 805 (N.D.Cal.1951), plaintiff, confined in immigration quarters for a month after arriving in the United States, sued the defendant alleging that the confinement resulted from the defendant's failure to obtain admission papers for the plaintiff. The Court recognized that the cause of action was essentially a common law suit for breach of contract, negligence, or fraud but ruled that it had jurisdiction because "[p]laintiff's right to recover hinges upon the court's construction or interpretation of a federal immigration law." *Id.* at 806, citing *Smith v. Kansas City Title Co., supra.*

A similar result has been reached in cases where a plaintiff sues a competitor for telling the plaintiff's customers that a patent is infringed by plaintiff's products. *Dal-Bac (Pty.), Ltd. v. Firma Astorwerk Otto Berning & Co.,* 244 F.Supp. 513 (S.D.N.Y.1965); *Ostow & Jacobs, Inc. v. Morgan-Jones, Inc.,* 180 F.Supp. 38 (S.D.N.Y.1959). The plaintiff sues for a declaration of patent invalidity and either explicitly, as in *Dal-Bac,* or implicitly, as in *Ostow & Jacobs,* complains

of unfair competition. In some circumstances, jurisdiction for the unfair competition claim would be supplied by 28 U.S.C. § 1338(b) because the unfair competition claim is joined with a substantial claim of patent invalidity for which 28 U.S.C. § 1338(a) directly supplies jurisdiction. But in *Ostow & Jacobs* and *Dal-Bac,* there was uncertainty whether the defendant sufficiently resembled a licensee of the patent owner to warrant a declaratory judgment action by the plaintiff on the patent claim. With jurisdiction over the patent claim uncertain under § 1338(a), and § 1338(b) jurisdiction therefore equally uncertain over the unfair competition claim, the courts grounded jurisdiction over the unfair competition claim directly on § 1338(a).

As Judge Dimock recognized in *Ostow & Jacobs,* the unfair competition claim "is not literally one 'arising under any Act of Congress relating to patents' within the words of Section 1338(a)." Nevertheless § 1338(a) jurisdiction was available because an aspect of federal law—patent invalidity—was essential to the success of the state-created unfair competition claim. See also *JFD Electronics Corp. v. Channel Master Corp.,* 229 F.Supp. 514 (S.D.N.Y.1964) (same result where the patent claim, as such, was barred by estoppel).

In the instant case, the complaint scrupulously avoids any mention of federal law, and of course the usual rule is that the existence of the federal question must appear on the face of a well-pleaded complaint. But while the detail of Chitty is not necessary to satisfy the modern pleading requirements of Fed.R.Civ.P. 8, neither should the permissible brevity of modern notice pleading be allowed to obscure an implicit federal ingredient of a complaint. When Sweeney alleges that Abramovitz brought suit "without probable cause," he is implicitly saying, "without probable cause to believe there existed a valid cause of action under 42 U.S.C. § 1983." The meaning of § 1983 and its application to the circumstances alleged in Abramovitz' original suit are essential ingredients of Swee-

---

1. It is now settled that claims founded on federal common law "arise under" the laws of the United States for purposes of § 1331 jurisdiction. *Illinois v. City of Milwaukee,* 406 U.S. 91, 99–100, 92 S.Ct. 1385, 31 L.Ed.2d 712 (1972).

ney's claim. Only if Abramovitz did not have probable cause to believe that the facts known to him established a cause of action under § 1983 does Sweeney have a valid claim now. The meaning of § 1983 is thus a "pivotal question of federal law," *T. B. Harms Co. v. Eliscu, supra,* 339 F.2d at 827, the resolution of which will be essential to determining whether Sweeney will have established a *prima facie* case.

Moreover, the potential for using state malicious prosecution suits to deter legitimate § 1983 actions implicates important federal concerns. As the Supreme Court said recently in a different context, "[t]o punish a person because he has done what the law plainly allows him to do is a due process violation of the most basic sort, and for an agent of the State to pursue a course of action whose objective is to penalize a person's reliance on his legal rights is 'patently unconstitutional.'" *Bordenkircher v. Hayes,* 434 U.S. 357, 363, 98 S.Ct. 663, 54 L.Ed.2d 604 (1978) (citations omitted).

If the question of what constitutes probable cause to bring a § 1983 action is determined according to state law, there is a possibility that the standard will be set so high in some state courts as to permit malicious prosecution suits to be brought in response to legitimate § 1983 actions. It is of course possible that § 1983 actions, like any other judicial process, may be abused. But determining the standards for a malicious prosecution action requires the delicate balancing of the legitimate interests of public officials to be free from unfounded § 1983 suits against the necessity of preserving plaintiffs' ability to vindicate their federal rights undeterred by fear of being subjected to unfounded malicious prosecution suits. Such a balancing may itself be a federal question sufficient to invoke § 1331 jurisdiction.

Predicating federal jurisdiction on this type of "arising under" analysis may not be appropriate every time a successful defendant, sued under a federal statute, claims malicious prosecution by his erstwhile plaintiff. But it is entirely appropriate to recognize such jurisdiction here to make sure that a federal forum is available to guard against the possibility that a malicious pros-

ecution action might be used to deter the use of § 1983 and thereby undermine the important rights that statute was enacted to protect.

The motion to remand is denied.