**OHIO VALLEY ENVIRONMENTAL COALITION and Carlos Gore,
Plaintiffs,**

v.

**Michael MIANO, in his official capacity as Director of the Division of Environmental Protection, Defendant.**

No. Civ.A. 298–0593.

United States District Court,
S.D. West Virginia,
at Charleston.

Oct. 19, 1998.

Jason Huber, Forman & Crane LC, Charleston, WV, for plaintiffs.

Thomas H. Zerbe, Office of Legal Service, Division of Environmental Protection, Charleston, WV, for defendant.

## MEMORANDUM ORDER

COPENHAVER, District Judge.

This matter is before the court on plaintiffs' motion to remand filed July 24, 1998, and on defendant's motion to dismiss filed July 7, 1998, the day this action was removed to this court. The motions have since been briefed, and the issues arising therein are ready for decision.

### I. Generally

Plaintiffs filed a petition for a writ of prohibition and declaratory judgment ("complaint") in the Circuit Court of Kanawha County, West Virginia, on June 10, 1998, seeking to remove defendant from the office of Director of the West Virginia Division of Environmental Protection ("WVDEP"). Plaintiffs contend that defendant's employment history creates an impermissible conflict of interest which, under applicable law, prohibits defendant from being Director of the WVDEP. Defendant subsequently removed the case to this court, pursuant to 28 U.S.C. § 1331 and 28 U.S.C. § 1441.

Plaintiffs' complaint contains four counts: Count I is entitled "[Defendant] has Conflicts of Interest Which Violate the West Virginia Water Pollution Control Act" (hereinafter "WVWPCA"). Specifically, however, Count I sets forth a violation of the provisions of 40 C.F.R. § 123.25(c), a federal regulation which has purportedly been "incorporated" into the WVWPCA through the execution of a Memorandum of Agreement ("MOA") between the United States Environmental Protection Agency ("EPA") and the State of West Virginia (the "State"). Counts II through IV allege that defendant's appointment violates § § 1, 2, and 3 of Article III of the West Virginia Constitution.

### II. Count I

#### A. Motion to Remand

Plaintiffs argue that this court lacks subject matter jurisdiction over all four counts in the complaint and that remand is appropriate because each count arises under West Virginia law.[1] Defendant, on the other hand, asserts that Count I of plaintiffs' complaint is based on 40 C.F.R.

---

1. Plaintiffs also assert that because they seek extraordinary remedies rather than federal statutory remedies, their claim does not arise under federal law. The nature of the remedy sought, however, does not change the components of plaintiffs' claim. Count I of the complaint seeks relief for an alleged violation of 40 C.F.R. § 123.25(c). As will be seen, the disposition of Count I will turn on whether the requirements of § 123.25(c) are met.

§ 123.25(c), that it arises under the laws of the United States pursuant to 28 U.S.C. § 1331, and that it was properly removed pursuant to 28 U.S.C. § 1441(b).

■ Defendant's notice of removal is based on 28 U.S.C. § 1441(a), which provides that any civil action brought in state court over which the federal district courts have original jurisdiction may be removed by the defendant to the appropriate federal district court. One category of cases over which the district courts have original jurisdiction is that of "federal question" cases, defined as those cases "arising under the Constitution, laws, or treaties of the United States." 28 U.S.C. § 1331. A cause of action arises under federal law when the plaintiff's well-pleaded complaint raises issues of federal law. *Gully v. First Nat'l Bank*, 299 U.S. 109, 111, 57 S.Ct. 96, 81 L.Ed. 70 (1936). A complaint raises issues of federal law when "a right or immunity created by the Constitution or laws of the United States [is] an element, and an essential one, of the plaintiff's cause of action." *Bowman v. White*, 388 F.2d 756, 760 (4th Cir.1968), *cert. denied* 393 U.S. 891, 89 S.Ct. 214, 21 L.Ed.2d 172 (1968) (quoting *Gully v. First National Bank*, 299 U.S. 109, 112, 57 S.Ct. 96, 81 L.Ed. 70 (1936)).

Count I of plaintiffs' complaint sets forth a series of alleged facts which constitute a violation of 40 C.F.R. § 123.25(c), promulgated under the federal Clean Water Act. Inasmuch as the violation of § 123.25(c) is the very essence of plaintiffs' Count I claim, federal question jurisdiction over that claim is, for the reasons set forth below, found to exist in this court.

The Clean Water Act, among other things, establishes the National Pollution Discharge Elimination System ("NPDES"), a framework for the issuance of permits to dischargers of pollutants. 33 U.S.C. § 1342. The federal NPDES program allows a state to take control of the permitting process within its borders, so long as it complies with the federal standards set forth by the Clean Water Act

and the regulations promulgated under that act. *See Id.* at § 1342(a)–(b).

33 U.S.C. § 1314(i)(4)(D) provides that: The Administrator shall ... promulgate guidelines establishing the minimum procedural and other elements of any State program under section 1342 of this title, which shall include ... funding, personnel qualifications, and manpower requirements (including a requirement that no board or body which approves permit applications or portions thereof shall include, as a member, any person who receives, or has during the previous two years received, a significant portion of his income directly or indirectly from permit holders or applicants for a permit).

40 C.F.R. § 123.25(c), promulgated pursuant to 33 U.S.C. § 1314(i)(2)(D), provides that:

State NPDES programs shall ensure that any board or body which approves all or portions of permits shall not include as a member any person who receives, or has during the previous two years received, a significant portion of income directly or indirectly from permit holders or applicants for a permit.

Pursuant to the procedures set forth in the Clean Water Act, West Virginia has taken control over the NPDES permitting process within its borders. To maintain primacy over the permitting process, the State must comply with all applicable federal laws, including § 123.25(c). 33 U.S.C. § 1342(a)–(b).

Plaintiffs claim that defendant's employment history creates a conflict of interest prohibited by § 123.25(c). In support of their claim, plaintiffs allege that defendant has the authority to approve permits (Complaint, at ¶¶ 18–20), was employed within the past two years by an organization which held or had applied for permits (*Id.* at ¶¶ 21–24), and, thus, cannot hold the position of Director of the WVDEP pursuant to the applicable standard. (*Id.* at ¶ 25). Plaintiffs seek an order prohibiting defendant from performing his duties as

Director of the WVDEP and a declaration that defendant's conflict of interest violates West Virginia law. (Prayer for Relief, at ¶¶ 1–9).

Plaintiffs' basis for alleging state court jurisdiction over Count I is grounded on their contention that § 123.25(c) has been incorporated into West Virginia law through the execution of a Memorandum of Agreement ("MOA") between the State and the EPA.[2] Plaintiffs assert that the incorporation converts the nature of plaintiffs' claim from a federal to a state law cause of action.

The Introduction of the MOA provides that:

In recognition of the Clean Water Act (CWA) with amendments through 1978, the Consolidated Permit Regulations of 1980, the promulgated pretreatment regulations and that the State of West Virginia is requesting approval of a State program for National Pollutant Discharge Elimination System (NPDES) delegation, it is necessary to execute a Memorandum of Agreement (MOA) between the Chief [of the Division of Water Resources] and the EPA Regional Administrator.

This MOA is the mechanism for specifying the details of the EPA overview role of the State NPDES program, which is provided for in the above-referenced regulations.

The state shall administer the NPDES program consistent with this MOA, the CWA, applicable federal regulations, promulgated effluent guidelines and State law and regulations issued pursuant thereto.

(MOA, at 1) (internal citations omitted).

The provision requiring the State to "administer the NPDES program consistent with this MOA, the CWA, [and] applicable federal regulations" forms the basis for plaintiffs' incorporation argument. Plaintiffs contend that because the State must administer its NPDES program in a manner consistent with federal regulations, specifically § 123.25(c), the provisions of § 123.25(c) are "incorporated into the State Water Pollution Control Program." (Plaintiffs' Memorandum in Support of their Motion to Remand, at p. 7). Thus, plaintiffs maintain, the application of § 123.25(c) here "becomes wholly an issue of state law." (Id.)

The fact that the State has contractually bound itself, through the execution of the MOA, to comply with federal regulations promulgated under the Clean Water Act (including § 123.25(c)) does not operate to "incorporate" § 123.25(c) into the laws of West Virginia. Nor does it create law. It simply sets forth the State's agreement to comply with federal regulations when administering its NPDES program. Furthermore, neither the WVWPCA nor any other provision of the West Virginia Code imposes the limitations set forth by § 123.25(c) on "any board or body which approves all or portions of permits."[3] A search of the relevant state regulations produces a similar result.[4]

---

2. The MOA, executed in 1982, was originally between the West Virginia Division of Water Resources, which was a component of the Department of Natural Resources, and the EPA. Since that date, the West Virginia Division of Environmental Protection has replaced the Division of Natural Resources and maintains as one of its divisions the West Virginia Office of Water Resources. The West Virginia Office of Water Resources oversees West Virginia's NPDES program.

3. The court notes that such limitations have been imposed by statute on members of the West Virginia Environmental Quality Board. W.Va.Code § 22B–3–1. Defendant, however, is not alleged to be a member of the Environmental Quality Board, and, therefore, § 22B–3–1 plays no role in this action.

4. Section 47–10–17 of the West Virginia Environmental, Health, and Safety regulations provides that the "Chief of the Office of Water Resources shall not be a person who receives or has during the previous two (2) years received, a significant portion of income directly or indirectly from permit holders or applicants for a permit." Defendant Miano is the Director of the WVDEP, not the Chief of the Office of Water Resources, and, as such, falls outside the provisions of Section 47–10–17.

Section 123.25(c), not the MOA, governs the issues set forth in Count I. Even though the parties concede that no private right of action exists under the Clean Water Act to enforce § 123.25(c), the court concludes that Count I arises under federal law inasmuch as the Count I right asserted by plaintiffs under state law turns squarely on the construction of § 123.25(c) and the Clean Water Act.[5] *Smith v. Kansas City Title & Trust Co.*, 255 U.S. 180, 41 S.Ct. 243, 65 L.Ed. 577 (1921). *See also Franchise Tax Board v. Construction Laborers Vacation Trust*, 463 U.S. 1, 103 S.Ct. 2841, 77 L.Ed.2d 420 (1983). As such, the complaint was properly removable under 28 U.S.C. § 1441, and plaintiffs' motion to remand is denied to the extent it requests remand of Count I.

### B. Motion to Dismiss

Defendant moves the court to dismiss Count I of the complaint pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure. A Rule 12(b)(6) motion tests whether a proper claim has been stated in the complaint. 5A Wright & Miller, Federal Practice And Procedure § 1356 (2d ed.1990).

■ Defendant asserts that the Clean Water Act does not authorize suits by private entities for violations of 40 C.F.R. § 123.25(c). Plaintiffs, the Ohio Valley Environmental Coalition and Carlos Gore, are both private entities. The Clean Water Act only authorizes suits by private citizens or groups in limited circumstances. 33 U.S.C. § 1365(a) reads:

> [A]ny citizen may commence a civil action on his own behalf—(1) against any person ... who is alleged to be in violation of (A) an effluent standard or limitation under this chapter or (B) an order issued by the Administrator [of the EPA] or a State with respect to such a standard or limitation, or (2) against the Administrator where there is alleged a failure of the Administrator to perform any act or duty under this chapter which is not discretionary with the Administrator.

Here, plaintiffs have brought suit against defendant in his capacity as Director of the WVDEP, not against the EPA. Thus § 1365(a)(2) does not apply. The only remaining basis for a private cause of action under the Clean Water Act is § 1365(a)(1), which allows private suits to enforce effluent standards or limitations. For purposes of § 1365, the term "effluent standard or limitation" means:

> (1) effective July 1, 1973, an unlawful act under subsection (a) of section 1311 of this title; (2) an effluent limitation or other limitation under section 1311 or 1312 of this title; (3) standard of performance under section 1316 of this title; (4) prohibition, effluent standard or pretreatment standards under section 1317 of this title; (5) certification under sec-

---

5. Plaintiffs, citing *Merrell Dow Pharmaceuticals v. Thompson*, 478 U.S. 804, 106 S.Ct. 3229, 92 L.Ed.2d 650 (1986), also argue that their Count I claim merely alleges a violation of a federal regulation or statute as an element of a state law cause of action. In *Merrell Dow*, the United States Supreme Court held that a violation of a federal statute alleged merely as an element of a state law cause of action does not create a claim arising under federal law when Congress has determined there is no private cause of action for the federal violation. *Id.*, 478 U.S. at 817, 106 S.Ct. 3229. The facts of *Merrell Dow*, however, are markedly different from those in this case. In *Merrell Dow*, the violation of the federal statute, if proved, would only have constituted a "rebuttable presumption" or a "proximate cause" under state law rather than a federal action under federal law. *Id.*, at 812, 106 S.Ct. 3229. The Court concluded that allowing federal courts to exercise federal question jurisdiction under such circumstances, despite the fact that Congress did not provide a private federal remedy for the violation of the statute, would "flout, or at least undermine, congressional intent." *Id.*

Here, unlike *Merrell Dow*, 40 C.F.R. § 123.25(c) is the only authority supporting Count I of the complaint. No valid state statutory or common law rule is cited. Accordingly, § 123.25(c) is not merely alleged as an element of some state law cause of action. Rather, it forms the entire basis for Count I. Thus, Count I arises under federal law, and plaintiffs' reliance on *Merrell Dow* is misplaced.

tion 1341 of this title; (6) a permit or condition thereof issued under section 1342 of this title, which is in effect under this chapter (including a requirement applicable by reason of section 1323 of this title); or (7) a regulation under section 1345(d) of this title.

Defendant asserts and plaintiffs concede that § 123.25(c) does not set forth an "effluent standard or limitation," and, therefore, that the Clean Water Act does not authorize a private cause of action to enforce § 123.25(c). *See Middlesex County Sewerage Authority v. National Sea Clammers Association,* 453 U.S. 1, 101 S.Ct. 2615, 69 L.Ed.2d 435 (1981). Thus, the court concludes that Count I of plaintiffs' complaint, which finds its sole support in § 123.25(c), fails to state a valid cause of action.

While plaintiffs appear to allege in Count I the factual basis for a violation of 40 C.F.R. § 123.25(c), plaintiffs are not the proper parties to enforce that regulation. Rather, 33 U.S.C. § 1342 provides that whenever the EPA determines after a public hearing that a state is not administering an approved NPDES program in accordance with the applicable federal regulations, it shall notify the state, and if appropriate corrective action is not taken within ninety days, the EPA must withdraw approval of the state's NPDES program. Accordingly, the EPA, not plaintiffs, has both the authority and responsibility to enforce § 123.25(c).

Consequently, Count I must be dismissed. *See Davis v. United States,* 722 F.2d 1157, 1158 (4th Cir.1983); *Ryan v. Ohio Edison Co.,* 611 F.2d 1170, 1179 (6th Cir.1979).

## II. Counts II, III, and IV

■ Plaintiffs also seek remand of Counts II, III, and IV, which allege violations of the West Virginia Constitution.[6] Count II of the complaint alleges that defendant's conflicts of interest preclude him from the proper exercise of his duties as Director of the WVDEP, which, in turn, prohibits plaintiffs' from their "pursuit of happiness and safety" in violation of Article III, § 1 of the West Virginia Constitution.[7] Counts III and IV allege that those same conflicts of interest violate Article III, § § 2[8] and 3,[9] respectively, depriving plaintiffs of their right to governance by impartial magistrates and their rights to security, happiness, and safety.

Unlike Count I, which has no basis in state law, Counts II, III, and IV are brought under the West Virginia Constitution. As such, they are state law claims which contain, as an element, a violation of

---

**6.** Although it is not part of the record before the court, plaintiffs contend that they filed an amended petition, containing a fifth count, in the Circuit Court of Kanawha County. That count, which alleges a violation of Article III, § 10 of the West Virginia Constitution, is understood to be similar in kind to Counts II through IV of plaintiffs' complaint, and, if before the court, would be treated in the same manner.

**7.** Article III, § 1 of the West Virginia Constitution provides that:

All men are, by nature, equally free and independent, and have certain inherent rights, of which, when they enter into a state of society, they cannot, by any compact, deprive or divest their posterity, namely: the enjoyment of life and liberty, with the means of acquiring and possessing property, and of pursuing and obtaining happiness and safety.

**8.** Article III, § 2 provides that "[a]ll power is vested in, and consequently derived from, the people. Magistrates are their trustees and servants, and at all times amenable to them."

**9.** Article III, § 3 reads:

Government is instituted for the common benefit, protection and security of the people, nation or community. Of all its various forms that is the best, which is capable of producing the greatest degree of happiness and safety, and is most effectually secured against the danger of maladministration; and when any government shall be found inadequate or contrary to these purposes, a majority of the community has an indubitable, inalienable, and indefeasible right to reform, alter or abolish it in such manner as shall be judged most conducive to the public weal.

40 C.F.R. § 123.25(c). Defendant does not argue that this court has jurisdiction over Counts II, III, and IV. Rather, defendant requests that the court take jurisdiction over those claims pursuant to 28 U.S.C. § 1441(c). Inasmuch as the court has dismissed the only count in this case over which it has jurisdiction, plaintiffs' motion to remand with respect to Counts II, III, and IV is granted.

### IV. Conclusion

Accordingly, for the reasons stated, it is ORDERED that plaintiffs' Motion to Remand be, and it hereby is, denied with respect to Count I of the complaint and granted with respect to Counts II, III, and IV. It is further ORDERED that defendant's Motion to Dismiss be, and it hereby is, granted with respect to Count I.

The Clerk is directed to forward copies of this order to all counsel of record and to the Clerk of the Circuit Court of Kanawha County, West Virginia.