**CITICASTERS CO., Plaintiff,**

v.

**STOP 26–RIVERBEND, INC., et al., Defendants.**

**No. 4:00 CV 1549.**

United States District Court, N.D. Ohio, Eastern Division.

July 6, 2000.

John M. Debbeler, Graydon, Head & Ritchey, Cincinnati, OH, for Citicasters Co., plaintiff.

Percy Squire, Bricker & Eckler, Columbus, OH, for Stop 26–Riverbend, Inc., defendant.

### MEMORANDUM OPINION AND ORDER

DOWD, District Judge.

Plaintiff Citicasters Co. has filed a motion to remand (Doc. No. 7), along with a motion for temporary restraining order (Doc. No. 6). For the reasons set forth below, the motion to remand is granted, although the order is stayed for fifteen (15) days. As a result, the Court declines to rule on the motion for injunctive relief.

## I. BACKGROUND

This case originated on June 20, 2000, when Citicasters Co. ("Citicasters") filed a complaint in the Mahoning County Court of Common Pleas against Stop 26–Riverbend, Inc. ("Stop 26") and Esq. Communications, Inc. ("ESQ") [collectively, "defendants"], alleging breach of contract. The case was removed to this Court.

The relationship between the parties here dates back to at least May 20, 1998 when Citicasters and Stop 26 entered into an Assets Purchase Agreement ("APA") whereby Stop 26 agreed to sell to Citicasters certain assets associated with the ownership and operation of a radio station now known as WBTJ, 101.9 FM ("the Station" or "101.9"). The studio for 101.9 is located in Youngstown, Ohio and the transmitter site is owned by ESQ. Purportedly, there is substantial identity between the officers, directors and shareholders of Stop 26 and ESQ. Under the APA, Stop 26 agreed to cause ESQ to convey ownership of the transmitter site to Citicasters. Pursuant to various promissory notes and amendments to the APA, Citicasters advanced to Stop 26 $1,725,000 of the $2,750,000 total purchase price. The advance was secured by a security interest on the Station's assets.

In connection with the advance, the parties also entered in a Time Brokerage Agreement ("TBA") dated June 30, 1998,[1] whereby, for a monthly fee of $12,000, Stop 26 agreed to accept and broadcast programming supplied by Citicasters.[2] The TBA's term is until the APA is either closed or terminated, neither of which has occurred. Citicasters has broadcast its programming on the Station from June 30, 1998 until the recent events which sparked this lawsuit.

Citicasters filed its complaint on June 20, 2000, and on that same day, obtained a temporary restraining order against Stop 26. The complaint alleged that, on June 1, 2000, Stop 26, through its counsel and principal shareholder Percy Squire, advised Citicasters by letter that Stop 26 intended to resume operational control of WBTJ on or about June 11, 2000.[3] Stop 26 had been broadcasting programming to Youngstown's adult African–American community, its target audience, on WRBP, 1440 AM pursuant to the terms of another TBA with that station's owner. Stop 26 had been intending to sell WBTJ to Citicasters and buy the 1440 station but, due to its inability to obtain financing, Stop 26 has never been able to close either deal. The owner of 1440 got tired of waiting and found another buyer.

Citicasters rejected the proposal contained in the letter of June 1, 2000. Therefore, on June 12, 2000, Stop 26 sent another letter indicating that it was terminating the TBA, that it intended to resume operations on 101.9 on June 21, 2000 and that it would notify the FCC immediately that the Station's call letters would change

---

1. A copy of the TBA is attached to the complaint.

2. Pursuant to federal regulations, the TBA was filed with the Federal Communications Commission ("FCC") on August 16, 1999. The FCC has never objected to any of the terms of the TBA.

3. A copy of this June 1st letter is attached to the complaint. The proposal in the letter was as follows:

 1. Stop 26 and Percy Squire will immediately confess judgment for the full advance plus interest with an enforcement date of September 1, 2000;

2. Stop 26 resumes broadcasting on WBTJ on June 11, 2000;

3. No TBA payment is made for June, 2000;

4. Stop 26 provides immediate evidence to [Citicasters] of the progress of financing; and

5. Stop 26 continues to work on acquisitions in Youngstown and elsewhere and works with [Citicasters] to clear any Department of Justice or other regulatory issues in Youngstown or any other market where it will be helpful.

from WBTJ to WRBP on June 21, 2000.[4] Citicasters rejected this proposal by letter dated June 13, 2000.[5]

Although there was an additional series of letters exchanged, the parties remained at an impasse and Citicasters filed its complaint and obtained a TRO from the state court. On the same day, Stop 26 removed the case to this Court and, on June 21, 2000, filed a motion to dissolve the TRO. After a conference with the parties, this Court issued an order on June 21, 2000 dissolving the TRO and setting up a schedule whereby Citicasters would be permitted to move to reinstate the TRO and/or to remand the case. The parties subsequently represented to the Court that they had agreed to temporarily retain the status quo while they attempted to work out a mutually agreeable solution. They requested that the filing deadlines be extended to July 2000, and an order to that effect was issued on June 27, 2000.

On June 29, 2000, Mr. Percy Squire, principal shareholder of and counsel for Stop 26, met with representatives of Citicasters to discuss proposals concerning alternatives for consummating the acquisition of the Station. Citicasters indicated its willingness to work with Stop 26 toward a mutual solution. It agreed to a material reduction in the amount of Stop 26's outstanding promissory note obligations to Citicasters, provided Stop 26 would be able to negotiate similar agreements with its principal secured creditors and provided further that such reductions would permit the transfer to Citicasters of the Station's assets free and clear of all third party claims.

In response to Stop 26's stated desire to resume broadcasting to its target audience in the Youngstown area, Citicasters offered to sell Stop 26 several radio stations in Youngstown, contingent upon several matters including Stop 26's ability to obtain financing for the transaction and Stop 26's ability to concurrently close the purchase of 101.9.

Notwithstanding Mr. Squire's expressed appreciation for Citicasters' attempts to resolve this matter, by letter dated June 30, 2000, Mr. Squire proposed to preempt 30% of Citicasters' programming beginning July 1, 2000, indicating that he would not implement any changes if Citicasters disclosed its plans within a reasonable time. Although Citicasters responded by telephone within two hours, it programming was completely preempted beginning on July 1, 2000 at approximately 6:58 P.M. local time. The programming was replaced by Stop 26's programming.

Believing that it was being threatened with loss of its programming on 101.9 and in anticipation of what it deemed an eventuality, at about 12:35 P.M. on June 30, 2000, Citicasters began simulcasting its 101.9 programming, a product Citicasters calls "The Beat," on 95.9 FM. It is this simulcasting which Stop 26 holds out as justification for its assertion of rights under ¶ 4 of the TBA.[6] Stop 26 is of the view

---

**4.** A copy of this June 12th letter is attached to the complaint. It proposed, in full, as follows:

 1. Stop 26 returns herewith one-third (⅓) of [Citicasters'] June time brokerage payment;

 2. Stop 26 and [Citicasters] begin public announcement of the June 21, 2000 transition on June 14, one week before the transition (we previously agreed to defer the transition until June 21, at Mr. Kelley's request, in order to avoid a change before completion of the ratings period); and

 3. As soon as practical Stop 26 and [Citicasters] issue a joint press release in relation to the transition.

**5.** A copy of this letter is attached to the complaint.

**6.** Paragraph 4 provides:

 *Programming:* Broker shall furnish or cause to be furnished the Programming, which shall be an entertainment format, and may include, without limitation, news, promotions (including on-air giveaways), contests, syndicated programs, barter programs, paid-for programs, locally-produced programs, advertising commercial matter, including that in both program or spot announcement forms, and public service information. On a regular basis, Licensee

that simulcasting violates 47 C.F.R. § 73.3556, giving Stop 26 the right to cancel Citicasters' programming on 101.9, an action which it took at about 6:58 P.M. on July 1, 2000.

On July 3, 2000 at 8:11 A.M., Citicasters filed its Motion for Temporary Restraining Order (Doc. No. 6) and its Motion to Remand (Doc. No. 7). This Court met briefly with the parties on that day and scheduled a hearing on the motions for July 5, 2000.

The hearing was conducted on July 5, 2000 beginning at 1:00 P.M. and ending at 5:00 P.M. A transcript is available for appellate review.

## II. DISCUSSION

### A. Plaintiff's Motion to Remand (Doc. No. 7)

From the time of the removal of this action, this Court has been troubled by the issue of jurisdiction. Stop 26's Notice of Removal asserts that there is federal question jurisdiction, as follows:

> 3. This Court has original jurisdiction over this action based on federal question pursuant to 28 U.S.C. § 1331. On information and belief, based on the allegations of the Complaint, Plaintiffs [sic] seeks to prohibit Defendants from preempting programming on a radio frequency 101.9 FM, a frequency licensed to Defendant Stop 26, but operated by Plaintiff under a time brokerage agreement pursuant to the Communications Act of 1934....

The plaintiff's motion to remand argues that there was no basis for removal since the complaint, on its face, does not present a federal question. Defendants argue in return that, because the plaintiff's breach of contract claims require this Court to determine who controls programming at the Station, under federal law and regulations, federal question jurisdiction exists.

 In order to properly remove an action, it has been held that it must appear "that some substantial disputed question of federal law is a necessary element of one of the well pleaded state claims, or that one or the other claim is 'really' one of federal law." *Franchise Tax Board v. Laborers Vacation Trust*, 463 U.S. 1, 13, 103 S.Ct. 2841, 77 L.Ed.2d 420 (1983).

 The Supreme Court has also held that the mere claim of a violation of a federal statute, where that statute creates no private right of action, is insufficient to confer federal question jurisdiction. *Merrell Dow Pharmaceuticals, Inc. v. Thompson*, 478 U.S. 804, 106 S.Ct. 3229, 92 L.Ed.2d 650 (1986). In *Merrell Dow*, plaintiffs had sued a drug manufacturer in state court alleging that use of a certain drug during pregnancy caused birth defects in the plaintiffs' children.[7] One count of the complaint alleged that the offending drug was "misbranded" in violation of the Federal Food, Drug, and Cosmetic Act

---

shall air, or shall require Broker to air, on the Station programming on issues of importance to the local community. *All actions or activities of Broker under this Agreement, and all Programming provided by Broker shall be in accordance with (i) the Communications Act of 1934, as amended; (ii) Federal Communications Commission (the "FCC") rules, requirements and policies,* including, without limitation, the FCC's rules on plugola/payola, lotteries, station identification, minimum operating schedule, sponsorship identification, political programming and political advertising rates; (iii) all applicable federal, state and local regulations and policies; and (iv) generally accepted quality standards consistent with Licensee's past practices. *Broker*

*agrees that, if in the sole, good faith judgment of the Licensee or the Station's General Manager, Broker does not comply with the standards of this paragraph, Licensee may suspend or cancel any Programming not in compliance.* The right to use the Programming and to authorize its use in any manner and in any media whatsoever shall be, and remain, vested solely in Broker, subject in all events to the rights, if any, of others in such Programming. (emphases added).

7. *Merrell Dow* involved two separate cases filed by two sets of parents. The cases were consolidated.

("FDCA"), 21 U.S.C. § 301, *et seq.*, because its labeling did not provide adequate warning regarding potential dangerousness. It was further alleged that "violation of said federal statutes directly and proximately caused the injuries suffered" by the two infants. The drug company filed a removal petition alleging that the action was "founded, in part, on an alleged claim arising under the laws of the United States."[8] The district court denied a motion to remand and the Sixth Circuit Court of Appeals reversed, relying on *Franchise Tax Board, supra.* The Supreme Court affirmed, concluding that

> a complaint alleging a violation of a federal statute as an element of a state cause of action, when Congress has determined that there should be no private, federal cause of action for the violation, does not state a claim "arising under the Constitution, laws, or treaties of the United States." 28 U.S.C. § 1331.

478 U.S. at 817, 106 S.Ct. 3229.

■ Defendants argue here that to resolve Citicasters' claims, Citicasters must "prove that Stop 26 did not have the authority to control programming." (Doc. No. 10 at 5). Defendants state that "[t]his issue will necessarily call for the Court to rely on and interpret the FCC regulations set forth in 47 C.F.R. Part 73." *Id.*

This Court does not agree with defendants' position and fails to see how this case differs from *Merrell Dow*, except for the federal statute relied upon. Plaintiff does not dispute that the TBA, as it must under federal regulations, grants Stop 26 ultimate authority to control programming. However, plaintiff argues that Stop 26 has not properly exercised that control within the terms and conditions of the TBA and, thus, that Stop 26 has breached the TBA.

Here, as pointed out by the plaintiff, neither party challenges the propriety of the TBA. The FCC, which has had the TBA on file since August 16, 1999, has never challenged the TBA. The TBA on its face complies with the applicable FCC regulations, as it assigns ultimate programming authority, as well as the ability to preempt programming within reasonable parameters, to Stop 26. None of these issues are disputed. In addition, neither party, defendants included, have pointed this Court to any provision of the Communications Act which provides for a private right of action.

At the hearing conducted on July 5, 2000, counsel seemed to be in agreement that the FCC, with its particular expertise, may be the proper adjudicator, through its administrative proceedings, of some elements of this dispute. In particular, plaintiff argues that defendants purport to have the authority under ¶ 4 of the TBA to completely preempt Citicasters' programming and cancel the TBA because, in defendants' view, Citicasters' simulcasting of its programming violates the anti-duplication provision of 47 C.F.R. § 73.3556. Defendants also pointed out that there is little or no controlling case law on point because the particular situation arising in this case has been occasioned by a somewhat recent statutory enactment, namely, the Telecommunications Act of 1996, which reduced significantly the previous restrictions regarding the number of radio stations a single owner could own in a market.

This is a close call. However, the Court concludes that the dispute here involves a breach of contract claim.[9] Therefore, the

---

**8.** The petition also alleged diversity jurisdiction; however, this was rejected by the Supreme Court because the drug company had its principal place of business in the forum state. 478 U.S. at 806 n. 1, 106 S.Ct. 3229.

**9.** In reaching this decision, the Court is also guided by the well-reasoned opinion in *Dick-*

*inson v. Cosmos Broadcasting Co., Inc.,* Civ. A. No. 91–T–072–N, 1991 WL 715723 (M.D.Ala. April 1, 1991), a class action lawsuit brought by two political candidates who claimed the defendant broadcasting stations had overcharged them for political advertising, in breach of contracts between the parties. The *Dickinson* case was removed from state to

case was improperly removed. Accordingly, plaintiff's motion to remand (Doc. No. 7) is GRANTED and a separate order of remand shall issue.

That having been said, since this is such a close call based on very little case law directly on point, the Court will also STAY the order of remand for a period not exceeding fifteen (15) days to allow Stop 26 an opportunity to seek whatever appellate review may be available.

Further, the Court declines to require payment of costs and/or actual expenses, including attorney fees, incurred by the plaintiff as a result of the removal.

### B. Plaintiff's Motion for Temporary Restraining Order and Preliminary Injunction (Doc. No. 6)

Because the Court has decided to remand this case to the Court of Common Pleas for Mahoning County, it concludes that it lacks jurisdiction to rule on the

federal court on the ground that it presented a federal question "aris[ing] under" the Communications Act of 1934. The *Dickinson* court, granting a motion to remand, concluded:

> Although resolution of the claims will probably require some interpretation, and even application, of federal statutes and regulations, the claims are essentially local to the state; that is, although the source of, and force behind, the contracts between the plaintiffs and the broadcasters may be federal, it is still the contracts, and not federal law, that the plaintiffs seek to have enforced.

*Id.* at *6.

10. Paragraph 10 provides:

> *Licensee Control of Station.* Notwithstanding anything to the contrary in this Agreement, Licensee shall have full authority, control and power over the operation of the Station during the period of this Agreement. *Licensee shall retain control, said control to be reasonably exercised, over the policies, programming and operations of the Station, including, without limitation, the right to decide whether to accept or reject any Programming or advertisements, the right to preempt any Programming in order to broadcast a program deemed by Licensee to be of greater national, regional, or local interest, and the right to take any other ac-*

motion for injunctive relief. The Court, however, feels compelled to comment that issuing a TRO would be very troubling given the broad grant of discretion to the licensee, Stop 26, in paragraph 10 of the TBA.[10]

In any event, the Court conducted an extensive hearing on the motion for TRO. If an appellate court were to conclude that it needed more insight regarding the issues therein, a transcript of the hearing is available.

### III. CONCLUSION

For the reasons set forth above, plaintiff's motion to remand (Doc. No. 7) is GRANTED; however, the Order of Remand shall be STAYED for a period not to exceed fifteen days (15) days.

Further, due to lack of jurisdiction, plaintiff's motion for TRO (Doc. No. 6) is denied without prejudice.

IT IS SO ORDERED.

> *tions necessary for compliance with the laws of the United States; the laws of the relevant states; the rules, regulations, and policies of the FCC* (including without limitation the prohibition on unauthorized transfers of control); and the rules, regulations and policies of other federal governmental authorities, including without limitation the Federal Trade Commission and the Department of Justice. Licensee shall be responsible for ensuring that FCC requirements are met with respect to ascertainment of the problems, needs and interests of the community, public service programming, main studio staffing, maintenance of public inspection files and the preparation of quarterly issues/programs lists. Broker shall, upon request by Licensee, provide Licensee with information with respect to such of Broker's programs which are responsive to the problems, needs and interests of the community, so as to assist Licensee in the preparation of required quarterly issues/programs lists, and shall provide upon request other information to enable Licensee to prepare other records, reports and logs required by the FCC or other local, state or federal governmental agencies. Whenever on the Station's premises, all Broker personnel shall be subject to the supervision and the direction of Licensee's designated personnel. (emphasis added).

### JUDGMENT ENTRY AND ORDER OF REMAND

For the reasons set forth in the contemporaneously filed Memorandum Opinion and Order, the above-captioned case is REMANDED to the Court of Common Pleas for Mahoning County, Ohio. Further, this Order of Remand is STAYED for a period not to exceed fifteen (15) days to permit defendants an opportunity to seek any available appellate review.