**Eleanor V. BODKIN and Maria D.L. Coleman, Appellants,**

v.

**COOK INLET REGION, INC., Appellee.**

No. S–11870.

Supreme Court of Alaska.

April 4, 2008.

Rehearing Denied May 20, 2008.

---

Fred W. Triem, Petersburg, for Appellants.

Bruce E. Gagnon and Jerome H. Juday, Atkinson, Conway & Gagnon, Anchorage, for Appellee.

Before: FABE, Chief Justice, EASTAUGH and CARPENETI, Justices.

*OPINION*

FABE, Chief Justice.

## I. INTRODUCTION

Eleanor Bodkin and Maria Coleman, shareholders of Cook Inlet Region, Inc. (CIRI), appeal the superior court's dismissal of their challenge to (1) the legality of CIRI's payments to "original" shareholders over the age of sixty-five under the Alaska Native Claims Settlement Act (ANCSA) and Alaska state law, and (2) the constitutionality of ANCSA to the extent that it preempts state law in order to permit these payments. Because the plain language of ANCSA authorizes CIRI's distributions to elder shareholders, and because Bodkin and Coleman's constitutional claims lack a sound legal basis, we uphold the superior court's judgment.

## II. FACTS AND PROCEEDINGS

In 1971 Congress passed the Alaska Native Claims Settlement Act, 43 U.S.C. §§ 1601 et seq., "to achieve a fair and just settlement of all aboriginal land [in Alaska] ... with maximum participation by Natives in decisions affecting their rights and property."[1] Toward that end, the Act established twelve in-state Native regional corporations to hold land and capital on behalf of Alaska Native shareholders.[2] "Except as otherwise expressly provided," the Act gives these shareholders "all rights of a shareholder in a business corporation organized under the

---

1. *Broad v. Sealaska Corp.,* 85 F.3d 422, 425 (9th Cir.1996), *cert. denied,* 519 U.S. 1092, 117 S.Ct. 768, 136 L.Ed.2d 714 (1997).

2. *See* 43 U.S.C. § 1606 (2006).

laws of the State."[3] In 1987 Congress amended ANCSA to give each regional corporation the authority to establish settlement trusts "to promote the health, education, and welfare of its beneficiaries and preserve the heritage and culture of Natives."[4] A 1998 amendment "expressly authorized and confirmed" the regional corporations' authority to pursue those objectives.[5] It further stipulated that "such benefits need not be based on share ownership in the Native Corporation and such benefits may be provided on a basis other than pro rata based on share ownership."[6]

CIRI is an Alaska Native regional corporation organized under ANCSA. In February 2000 the CIRI board of directors passed a resolution creating the "Elders' Benefit Program." The program established a revocable trust that provided quarterly payments of $450 to any shareholder aged sixty-five or older who received shares in CIRI as an original enrollee. The Board determined that the program did not require a shareholder vote. Shortly after the Board established the program, Emil Notti, a CIRI shareholder who did not qualify for benefits, filed suit. CIRI removed the case from superior court to the United States District Court for the District of Alaska.

The district court granted summary judgment in CIRI's favor. It upheld the validity of the Elders' Benefit Program because "[s]tate law authorizes ANCSA corporations to take any action authorized by ANCSA" and "ANCSA [§ 7(r)] permits preferential distributions." The Ninth Circuit Court of Appeals affirmed, reasoning that "[t]he plain language of § 7(r) allows CIRI to make the distributions made in this case."[7] The United States Supreme Court denied certiorari.[8]

In the meantime, federal tax reforms led CIRI's board of directors to favor replacing the Elders' Benefit Program with an irrevocable trust, titled "The Elders' Settlement Benefit Trust." Pursuant to ANCSA, 43 U.S.C. §§ 1629b(a)(3) & (b)(1), the Board passed a resolution to establish the trust and then sought the approval of a majority of its shareholders. In April 2003 the corporation distributed a Voter's Guide and Supplemental Proxy Statement detailing the proposed trust. These materials explained that the trust would cause "CIRI's assets [to] decline by … $16 million, or about 2.1% of the book value of [2002] assets" and outlined several "risk factors" that could lead a shareholder to vote against the proposal. At the corporation's June 7, 2003 annual meeting, CIRI obtained majority shareholder approval to implement the trust. On September 2, 2003, CIRI registered the trust with the superior court.

On May 8, 2003, Eleanor Bodkin filed this suit in superior court against CIRI. Her complaint purported to state five "major claims," the "most urgent" of which challenged CIRI's proxy materials as "not provid[ing] adequate disclosure to the rank-and-file shareholders." Appellant Maria Coleman joined Bodkin in an amended class action complaint filed on January 26, 2004, after the CIRI shareholders approved the trust. The amended complaint repeated allegations that the CIRI April 2003 proxy "did not provide adequate disclosure" and that the Elders' Benefit Program and the trust illegally discriminated among shareholders. On March 8, 2004, CIRI moved to dismiss for failure to state a claim upon which relief could be granted. The corporation argued that ANCSA expressly permits the benefit programs and that its proxy statement contained no material misstatements or omissions. CIRI also filed a motion for sanctions under Alaska Civil Rules 11 and 95, alleging that Bodkin and Coleman's counsel, who had also represented Emil Notti in his lawsuit regarding the same issues, had "no reasonable excuse for his conduct in signing and submitting a[c]omplaint that is not well-grounded in law or fact."

**3.** *Id.* § 1606(h)(1).

**4.** *Id.* § 1629e(b)(1).

**5.** *Id.* § 1606(r).

**6.** *Id.*

**7.** *Notti v. Cook Inlet Region, Inc.,* 31 Fed.Appx. 586, 2002 WL 464716 (9th Cir.2002).

**8.** *Notti v. Cook Inlet Region, Inc.,* 537 U.S. 1104, 123 S.Ct. 867, 154 L.Ed.2d 773 (2003).

Bodkin and Coleman requested an extension of time to respond to CIRI's motion to dismiss, and the superior court granted that request. Bodkin and Coleman used this time to amass an opposition memorandum of 150 pages, which included a cross-motion for partial summary judgment. The superior court refused to consider the summary judgment motion until after the court resolved CIRI's motion to dismiss. Similarly, it stated its intention to postpone hearing "arguments on the other ripe motions," including Bodkin and Coleman's motion for class certification. Nevertheless, Bodkin and Coleman persisted in filing a "reply" to follow up on their cross-motion for partial summary judgment. CIRI filed a motion challenging Bodkin and Coleman's "reply" as premature since it had yet to file its response to Bodkin and Coleman's motion for summary judgment, and would not need to do so until after the court considered the Civil Rule 12(b)(6) motion.

The superior court eventually heard oral argument on CIRI's motion to dismiss on July 28, 2004, and on September 24, 2004, the lower court issued its decision dismissing Bodkin and Coleman's suit. The superior court's opinion notes that "several courts have rejected [Plaintiffs'] same or similar claims." Specifically, the opinion cites our decision in *Sierra v. Goldbelt, Inc.*[9] and the Ninth Circuit's decision in *Broad v. Sealaska Corp.*[10] for the proposition that ANCSA allows "distributions to subsets of shareholders." In addition to the case law, the superior court relied on § 7(r)'s express language, which stipulates that benefits "need not be based on share ownership."[11]

The superior court further buttressed its decision with evidence from ANCSA's legislative history. The congressional record directly addresses the "benefits" permitted under § 7(r):

> Examples of the type of programs authorized include: scholarships, cultural activities, shareholder employment opportunities and related financial assistance, funeral benefits, meals for the elderly and other elders['] benefits *including cash payments,* and medical programs.[12]

The superior court therefore concluded that "Congress intended to provide for cash distributions" and that "ANCSA authorizes the Elders' Benefit Program and Elders' Settlement Trust."

The superior court refused to exercise jurisdiction over Bodkin and Coleman's constitutional "taking" challenge to CIRI's benefit programs, reasoning that "[i]f the plaintiffs have a claim for taking their property, they must assert that claim against the U.S. government which authorized the statute." The court went on to reject the rest of Bodkin and Coleman's constitutional claims—including their assertion that CIRI's benefit programs deny them equal protection under the law. The court reasoned that the constitution "protects individuals from state action but not from deprivations by private actors." Because CIRI "is not a governmental agency," the superior court concluded that Bodkin and Coleman could not succeed on these claims.

Finally, the superior court disposed of Bodkin and Coleman's allegations regarding the adequacy and accuracy of CIRI's proxy materials. The court found that "CIRI's proxy materials provided accurate and complete information regarding the impact of the settlement trust on the corporation and the individual shareholder." Addressing Bodkin and Coleman's argument that CIRI should have included estimates of the programs' impact on individual share prices, the superior court pointed out that their objection failed to recognize the complexity of stock price valuation, especially where "shares may not be bought or sold on the open market." Similarly, the court dismissed Bodkin and Coleman's claim that CIRI's "proxy materials are misleading or not useful because the font size is too small," reasoning that "[n]othing about the font size would lead a shareholder to disregard the proxy materials."

---

**9.** 25 P.3d 697, 702 (Alaska 2001).

**10.** 85 F.3d 422 (9th Cir.1996).

**11.** 43 U.S.C. § 1606(r).

**12.** 144 Cong. Rec. S26254 (1998) (emphasis added).

Following the court's ruling, Bodkin and Coleman submitted a motion for reconsideration, which was denied. Bodkin and Coleman appeal.

## III. STANDARD OF REVIEW

 We review de novo a superior court's dismissal of a complaint pursuant to Alaska Civil Rule 12(b)(6).[13] This same review applies to constitutional issues and any other questions of law.[14] We review a lower court's discovery rulings and its decision to expressly exclude material beyond Rule 12(b)(6) pleadings for abuse of discretion.[15]

## IV. DISCUSSION

Bodkin and Coleman present three issues for review. First, Bodkin and Coleman argue that the superior court erred in excluding extrinsic evidence that they sought to submit with their opposition to CIRI's motion to dismiss. Second, they claim that ANCSA does not authorize CIRI's benefit program and trust. Finally, they argue that even if ANCSA does authorize the benefit program and trust, the distributions qualify as "government action" giving rise to constitutional claims.

### A. The Superior Court Did Not Abuse Its Discretion in Declining To Consider Additional Evidence Presented by Bodkin and Coleman Prior to Granting Appellee's Rule 12(b)(6) Motion.

 Bodkin and Coleman argue that the superior court erred in declining to convert CIRI's motion to dismiss to a motion for summary judgment. They contend that the evidence that they sought to submit with their opposition to the motion to dismiss would have entitled them to relief if the superior court had considered the motion as one for summary judgment. This evidence includes CIRI's "admissions" about its elders' benefit programs, as well as proffered expert testimony on the CIRI proxy materials. We must decide whether the lower court abused its discretion in excluding this "material beyond the pleadings . . . offered in conjunction with a Rule 12(b)(6) motion."[16]

We hold that it did not. Bodkin and Coleman's brief sheds no further light on the importance of their proffered expert testimony and devotes scant attention to the adequacy of CIRI's proxy materials in general. We have held before that "where a point is given only a cursory statement in the argument portion of a brief, the point will not be considered on appeal."[17] In their sixty-nine-page brief with its various tables and over fifty footnotes, Bodkin and Coleman limit their analysis of the proxy materials to passing remarks contained within two sentences and a footnote on a single page. Bodkin and Coleman's reply brief ignores the proxy materials issue altogether. Thus, without some elaboration on how their expert testimony bears on the proxy issue in their complaint, Bodkin and Coleman fail to convince us that the superior court abused its discretion in excluding that testimony.

 Bodkin and Coleman similarly fail to persuade us that the superior court abused its discretion in rejecting such other materials as CIRI's "admissions" about its elders' benefit programs, which they sought to submit with their opposition to CIRI's motion to dismiss.[18] For the most part, the "factual disputes" that Bodkin and Coleman cite seem neither factual nor disputed. For example, references in CIRI's corporate statements to

---

13. *Carlson v. Renkes,* 113 P.3d 638, 640–41 (Alaska 2005).

14. *Evans ex rel. Kutch v. State,* 56 P.3d 1046, 1049 (Alaska 2002).

15. *Marron v. Stromstad,* 123 P.3d 992, 998 (Alaska 2005); *see also Martin v. Mears,* 602 P.2d 421, 426–27 (Alaska 1979).

16. *Martin,* 602 P.2d at 426 (quoting 5 C. WRIGHT & MILLER, FEDERAL PRACTICE AND PROCEDURE § 1366 (1969 & Supp.1979)).

17. *Adamson v. Univ. of Alaska,* 819 P.2d 886, 889 n. 3 (Alaska 1991).

18. As CIRI points out, the bulk of Bodkin and Coleman's excerpt of record consists of this excluded material. Because we hold that the superior court did not err in excluding these materials, we will not consider them in our review of the lower court's decision to dismiss Bodkin and Coleman's complaint.

the elders' benefit payments as "distributions" or "dividends" do not alter our analysis of whether CIRI's quarterly cash payments to original stockholders over the age of sixty-five violated ANCSA. Bodkin and Coleman cite other purportedly "disputed issues of fact," including the number of elders receiving benefits, or how much the program costs on a per share basis, but again they fail to explain how these issues relate to their claims.

### B. The Superior Court Correctly Held that ANCSA Expressly Authorizes CIRI's Elders' Benefit Program and Elders' Settlement Benefit Trust, Thereby Preempting Alaska Law.

■ When Congress amended ANCSA in 1998, it "expressly authorized" each regional corporation to distribute "benefits" in order to "promote the health, education, or welfare" of its beneficiaries.[19] This amendment, contained in ANCSA § 7(r), further stipulates that "such benefits need not be based on share ownership in the Native Corporation and such benefits may be provided on a basis other than pro rata based on share ownership."[20]

Bodkin and Coleman argue that § 7(r)'s authorization of "benefits" does not extend to the cash distributions that CIRI has paid out in its elders' benefit program and trust. They contend that "[i]n modern parlance, 'benefits' refers to governmental or institutional grants of charitable aid, assistance, or welfare [and the term] is not used to mean corporate distributions or dividends." When pressed by the superior court to elaborate on the term's meaning, Bodkin and Coleman indicated that "the statute [is] limited to providing benefits by need only.... It means some demonstrable need. That's what the language [used] in 7(r) means."

But the legislative history behind § 7(r) casts doubt upon this characterization. On the floor of the Senate, Senator Frank Murkowski urged passage of the ANCSA amendment. He also noted that "[e]xamples of the type of programs authorized [by § 7(r) ] include: scholarships, cultural activities, shareholder employment opportunities and related financial assistance, funeral benefits, meals for the elderly and other elders['] benefits *including cash payments,* and medical programs."[21] Bodkin and Coleman dismiss that legislative history, however, as containing little more than Senator Murkowski's statement, which they urge us to ignore. Bodkin and Coleman assert that the plain meaning of "benefits" cannot include what CIRI's own promotional literature characterizes as "dividends." According to Bodkin and Coleman, these terms are mutually exclusive. We disagree.

As the superior court pointed out, we have previously considered an argument closely akin to the one Bodkin and Coleman advance in this appeal. In *Sierra v. Goldbelt, Inc.,* we considered whether Goldbelt, Inc., another Native regional corporation, could issue shares to original shareholders over the age of sixty-five.[22] In upholding Goldbelt's share issuance, we looked to Congress's intent and concluded that "Native corporations must have broad discretion to fashion elder benefit programs that meet the needs of elders."[23] We made note of certain restrictions that do apply to Native regional corporation distributions. For example, a Native regional corporation may not define "classes of beneficiaries ... by reference to place of residence, family, or position as an officer, director, or employee of a Native Corporation."[24] We clarified, however, that ANCSA permits limiting beneficiaries to "elders who owned original shares of stock."[25]

Here, Bodkin and Coleman advance no principled basis for distinguishing *Goldbelt.* They emphasize "the qualitative difference between the issuance of corporate stock ...

**19.** 43 U.S.C. § 1606(r).

**20.** *Id.*

**21.** 144 Cong. Rec. S26254 (1998) (emphasis added).

**22.** 25 P.3d 697 (Alaska 2001).

**23.** *Id.* at 702.

**24.** *Id.* (citing 43 U.S.C. § 1606(g)(2)(B)(iii)(IV) (1986 & Supp.2000)).

**25.** *Id.*

and discriminatory cash payments." According to Bodkin and Coleman, the issuance of stock "institutionalizes the ownership interest of original shareholders in the corporation, but cash payments do not." Yet the Goldbelt board agreed to redeem the shares they issued to elders at a fixed price, and elders received the equivalent of $1,000.[26] Thus, for many elders, the Goldbelt program differed only in its form and duration from CIRI's quarterly cash distributions. Bodkin and Coleman fail to assemble any support from the relevant statutory text, legislative history, or case law to distinguish our holding in *Goldbelt* from the case at hand.[27]

## C. The United States Constitution Does Not Afford Bodkin and Coleman Any Relief from this Court.

Bodkin and Coleman argue alternatively that if ANCSA's provisions "could be used as CIRI interprets and applies them—these statutes would violate the Fifth Amendment." In addition to claiming an unconstitutional taking of their property, Bodkin and Coleman contend that authorizing CIRI's elders' benefit programs interferes with other constitutional rights, including "equal protection to similarly situated but excluded shareholders" and "due process," because the programs "impos[e] retroactive liability on the excluded shareholders." Bodkin and Coleman further assert that CIRI's interpretation and application of ANCSA "extinguish the excluded shareholders' vested contractual right to equal distributions."

■ Bodkin and Coleman must pursue their takings claim against the federal government in the United States Court of Federal Claims. The federal Tucker Act[28] vests that court with "jurisdiction to render judgment upon any claim against the United States founded either upon the Constitution, or any Act of Congress."[29] Addressing a similar takings claim involving the same benefit programs at issue here, the Ninth Circuit declined to exercise jurisdiction "because appellants must raise that claim under the Tucker Act in the Federal Court of Claims."[30] Federal case law makes clear that Bodkin and Coleman's takings claim is premature until they have first presented a claim for compensation pursuant to the Tucker Act.[31] The superior court thus correctly ruled that it lacked jurisdiction over those claims.

■ The superior court concluded that Bodkin and Coleman's other constitutional claims fail for lack of state action. As the superior court noted, the Ninth Circuit rejected similar constitutional claims on this basis in *Broad v. Sealaska.*[32] CIRI argues persuasively that we should bypass any consideration of Bodkin and Coleman's constitutional claims on the merits and affirm the superior court on alternative jurisdictional grounds because the ANCSA Amendments of 1987[33] provide that "the United States District Court for the District of Alaska shall have exclusive original jurisdiction" over constitutional challenges to ANCSA.[34] Bodkin and Coleman address this argument with a single sentence in their reply. Citing *Louisville & Nash Railroad Co. v. Mottley*[35] and *Merrell Dow Pharmaceuticals, Inc. v.*

**26.** The Goldbelt resolution "approved the issuance of 100 shares to each eligible elder and authorized prompt redemption of those shares at $10 per share." *Id.* at 700.

**27.** In contrast to CIRI's program, the Goldbelt elders program issued shares to all original shareholders, including those who no longer held any stock in the corporation. Bodkin and Coleman do not, however, attach any significance to that difference, perhaps because there is none to be gleaned.

**28.** 28 U.S.C. § 1491.

**29.** *Id.* § 1491(a)(1).

**30.** *Notti v. Cook Inlet Region Inc.,* 31 Fed.Appx. 586, 587, 2002 WL 464716 (9th Cir.2002).

**31.** *See Bay View, Inc. v. Ahtna, Inc.,* 105 F.3d 1281, 1285 (9th Cir.1997).

**32.** 85 F.3d 422 (9th Cir.1996).

**33.** Pub.L. No. 100–241, § 16(a)(1), 101 Stat. 1813 (1988), *reprinted in* Historical and Statutory Notes, 1988 Amendments, 43 U.S.C. § 1601.

**34.** *Id.* at § 16(b), 101 Stat. 1813–1814.

**35.** 211 U.S. 149, 29 S.Ct. 42, 53 L.Ed. 126 (1908).

*Thompson,*[36] they argue that "[t]he federal court does not have jurisdiction of this case because the federal question is brought in by way of defense, not as part of plaintiffs' case in chief." But this argument is not responsive to CIRI's jurisdictional challenge, given that Bodkin and Coleman rely on the Fifth Amendment to challenge the legality of CIRI's elders' benefit programs.

In any event, we need not decide this jurisdictional question, which was not addressed by the superior court, because it is unnecessary to rely on an alternative ground to affirm the superior court's decision. We see no error in the superior court's ruling on the merits of Bodkin and Coleman's constitutional claims. As the Ninth Circuit concluded in *Broad,* the federal government's mere authorization of a Native corporation to create an elders' benefit trust does not implicate the Fifth Amendment.[37] Bodkin and Coleman fail to advance any basis for differentiating between CIRI's distributions and those of the Sealaska Corporation that were at issue in *Broad.*[38] Applying the same factors that led the Ninth Circuit to conclude that Sealaska's elders' benefit programs were not state action, we agree that Bodkin and Coleman's constitutional claims must fail for lack of state action.

## V. CONCLUSION

For the reasons detailed above, we AFFIRM the judgment of the superior court.

MATTHEWS and BRYNER, Justices, not participating.

---

**36.** 478 U.S. 804, 106 S.Ct. 3229, 92 L.Ed.2d 650 (1986).

**37.** 85 F.3d at 431.

